## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEFFREY NORTH,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

    Defendants.

Civil Action No. 08–1439 (CKK)

## MEMORANDUM OPINION
(September 30, 2009)

    This is a Freedom of Information Act ("FOIA") case brought by Plaintiff Jeffrey North against several agencies within the United States Department of Justice that have denied his requests for records relating to certain grand jury proceedings and a witness who testified against him at his criminal trial. With respect to each request, the responding agency either conducted a search for responsive records or determined that the request fell within one or more exemptions under FOIA. The parties have filed cross-motions for summary judgment on the dispositive issues of whether the searches conducted were legally sufficient or whether a FOIA exemption is applicable. After a thorough review of the parties' submissions and attachments thereto and applicable case law and statutory authority, the Court shall grant the agencies' motions for summary judgment and deny the plaintiff's motion for summary judgment with respect to Counts I, II, and IV of the Amended Complaint, and the Court shall dismiss without prejudice the parties' motions for summary judgment with respect to Count III of the Amended Complaint.

## I.  BACKGROUND

North was tried and convicted in 2000 for several drug- and gun-related offenses.  *See United States v. North*, No. 1:98-cr-10176-GAO (D. Mass. Mar. 15, 2000).  During North's trial, the government called a witness named Gianpaolo Starita to testify against North and identified Starita as a registered confidential informant.  *See* Pl.'s Mot. for Summ. J., ¶¶ 4-5, Addendum ("Add.") at 8 (undated trial transcript excerpt).  Starita's testimony implicated North in a scheme to buy marijuana.  *See id.*, ¶¶ 9-11, Add. at 18-20, 23-32 (undated trial transcript excerpts).  Starita had agreed to cooperate with the government and testify against North in exchange for leniency in his own criminal case.  *Id.*, ¶¶ 5-7, Add. 17-18 (undated trial transcript excerpts).  One Drug Enforcement Administration ("DEA") agent who testified at North's trial indicated in his testimony that there may be written reports describing Starita's cooperation with the government.  *Id.*, ¶ 10, Add. 40-42 (undated trial transcript excerpts).  Following his conviction, North submitted several FOIA requests to various agencies within the Justice Department seeking information related to Starita.  He also filed requests relating to certain grand jury proceedings.

### A.     Requests Filed with the Drug Enforcement Administration

On July 13, 2007, North filed a FOIA request with DEA requesting "any and all . . . documents which contain any debriefing/proffer statements or otherwise made/given by Gianpaolo Starita in regard to me . . . ."  *See* DEA's Stmt.[1], ¶ 15; DEA's Mot. for Summ. J., Ex.

---

[1] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1 when resolving motions for summary judgment).  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case).  The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of

M (July 13, 2007 FOIA Request) at 1.[2]  In its response letter, DEA neither confirmed nor denied

the existence of any of the requested records and informed North that it could not release any

such records without either proof of Starita's death or an authorized privacy waiver from Starita.

DEA's Stmt., ¶ 17; DEA's Mot. for Summ. J., Ex. O (Sept. 20, 2007 Response Letter) at 1.

DEA asserted that confirming the existence of law enforcement records relating to Starita would

constitute an "unwarranted invasion of personal privacy" and that such records would be exempt

from disclosure under FOIA Exemptions 6 and/or (7)(C), 5 U.S.C. §§ 522(b)(6), 522(b)(7)(C).

DEA's Mot. for Summ. J., Ex. O at 1.  North filed an administrative appeal with the Department

of Justice Office of Information Policy ("OIP"), which affirmed DEA's refusal to confirm or

deny the existence of records relating to Starita.  DEA's Stmt., ¶¶ 18-20.[3]

**B.     Requests Filed with the Bureau of Alcohol, Tobacco, Firearms & Explosives**

On July 4, 2007, North submitted a FOIA request to the Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF") for "any and all . . . documents written by ATF Agent John

Mercer which contain any debriefing/proffer statements or otherwise made/given by Gianpaolo

---

material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [2] Order at 1 (Sept. 4, 2008).  Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party.  The Court shall also cite directly to evidence in the record, where appropriate.

[2] DEA has indicated that it has received at least fifteen separate FOIA requests from North since 2004, including six that request information related to Starita.  *See* DEA's Stmt., ¶¶ 1-2.  Because North's Amended Complaint focuses on only the July 13, 2007 request, however, the Court shall not address the DEA's disposition of any other requests.

[3] In response to an earlier FOIA request submitted by North for records relating to Starita, DEA had conducted a search and located some responsive records.  *See* DEA's Stmt., ¶ 7.  In that instance, however, DEA also invoked FOIA Exemption 7(C) and did not produce any records.  *Id.*

Starita in regard to me . . . ."  ATF's Mot. for Summ. J., Ex. A (July 4, 2007 FOIA Request).  In

its response letter, ATF indicated that it would neither confirm nor deny the existence of records

relating to Starita out of concerns for Starita's privacy.  ATF's Stmt., ¶ 2.  North appealed ATF's

denial to OIP, which remanded the request to ATF with instructions to conduct a search for

responsive records.  *Id.*, ¶¶ 3, 5.  On remand, ATF conducted a search for records and informed

North that "[a] search of our records did not locate the requested information."  ATF's Mot. for

Summ. J., Ex. G (Mar. 24, 2008 Letter to Jeffrey North).  North filed another administrative

appeal challenging the sufficiency of the search, but OIP affirmed ATF's response.  ATF's Stmt.,

¶¶ 8, 10.

## C.    Requests Filed with the Executive Office for United States Attorneys

North submitted two separate FOIA requests to the Executive Office for United States

Attorneys ("EOUSA").  On June 25, 2007, North submitted a request for "grand jury records

pertaining to me, most specifically, the date in which the grand jury was very first

en paneled[sic]/convened for the original and superseding indictments returned against me in the

case of USA v. Jeffrey North 98-10176-GAO, and any documents that would indicate that an

extension of time for the grand jury was requested and granted."  EOUSA's Mot. for Summ. J.,

Ex. A (June 25, 2007 Letter to EOUSA) at 1.[4]  EOUSA responded by letter informing North that

---

[4] In his Opposition to EOUSA's Motion for Summary Judgment In Regard to the *North* Grand Jury Materials, North contends that he submitted an additional FOIA request on July 5, 2007 seeking information relating to "whether the grand jury in *USA v. North* . . . was convened pursuant to Fed. R. Crim. P. 6, or some other rule or statute."  Opp'n., ¶ 5.  North, however, provides no supporting evidence for this statement.  It appears that North's assertion may be mistaken because EOUSA *received* his June 25 letter on July 5 and cited the latter date in its response letter.  *See* EOUSA's Mot. for Summ. J., Ex. B (Aug. 9, 2007 Letter to Jeffrey North) at 1.

his request sought public records which may be obtained from the clerk of the court and that no further action would be taken.  EOUSA's Stmt., ¶ 2.  North filed an administrative appeal with OIP, which remanded the request to EOUSA to conduct a search for responsive records.  *Id.*, ¶¶ 3-5.  EOUSA conducted a search and referred North's request to the FOIA contact for the District of Massachusetts.  EOUSA *Id.*, ¶ 10.  The FOIA contact searched the grand jury records located at the United States Attorney's Office ("USAO") in the District of Massachusetts and did not find any records responsive to this request.  *See* EOUSA's Mot. for Summ. J., Ex. K (Decl. of Maryellen Barrett), ¶¶ 10-14, 16.  The search included at least two hand reviews of six boxes of documents retrieved from the Waltham Federal Records Center and a search of the computerized tracking system put in place in November 1997.  *Id.*, ¶¶ 12-14.  Grand jury records are routinely destroyed after ten years, and grand jury records pertaining to North would have been destroyed in 2007 or 2008.  *Id.*, ¶ 11.  North contends that on March 31, 2008, EOUSA issued a response indicating that it had found no responsive records.  Pl.'s Mot. for Summ. J., ¶ 51.

On July 5, 2007, North submitted a separate FOIA request with EOUSA for "a copy of a grand jury subpoena which issued in my name in either late 1997 or early 1998 in the Boston U.S. Courthouse."  EOUSA's Mot. for Summ. J., Ex. F (July 5, 2007 FOIA Request) at 1.  North further specified that the requested subpoena related to the criminal proceedings against Paul DeCologero.  *Id.*  EOUSA responded with a letter informing North that his request was denied in full because the information requested was "specifically exempted from disclosure by statute."  *Id.*, Ex. G (July 31, 2007 Letter to Jeffrey North).  The denial letter cited Rule 6(e) of the Federal Rules of Criminal Procedure as prohibiting the disclosure of grand jury information.  *Id.*  North

filed an administrative appeal, and OIP affirmed the EOUSA's denial.  EOUSA's Stmt., ¶¶ 8-9.

## II.  LEGAL STANDARD

In reviewing motions for summary judgment under FOIA, the Court must conduct a *de novo* review of the record.  *See* 5 U.S.C. § 522(a)(4)(B).  In the FOIA context, "*de novo* review requires the court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).  Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

All underlying facts and inferences are analyzed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Only after an agency seeking summary judgment proves that it has fully discharged its FOIA obligations is summary judgment appropriate.  *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).  In opposing a motion for summary judgment, a party must offer more than conclusory statements.  *See Broaddrick v. Exec. Office of the President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).  Indeed, a plaintiff pursuing an action under FOIA must establish that the agency has improperly claimed an exemption as a matter of law or that the agency failed to segregate and disclose all non-exempt information in the requested documents.  *See Perry-Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005).

Congress enacted FOIA for the purpose of introducing transparency to government activities. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998). Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information. *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9). The agency must demonstrate the validity of any exemption that it asserts. *See id.*; *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents.") In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Where the adequacy of the search is in doubt, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. But "[t]here is no requirement that an agency search every record system." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

An agency also has the burden of detailing what proportion of the information in a

document is non-exempt and how that material is dispersed throughout the document. *Mead

Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  Any non-

exempt information that is reasonably segregable from the requested records must be disclosed.

*Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996).  In addition, district

courts are obligated to consider segregability issues *sua sponte* even when the parties have not

specifically raised such claims.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d

1022, 1028 (D.C. Cir. 1999).

### III.  DISCUSSION

In considering the parties' cross-motions for summary judgment, the Court shall address

the adequacy of each agency's searches for records and the exemptions invoked.[5]

### A.      Requests Submitted to DEA (Count I)

North and DEA have filed cross-motions for summary judgment on the issue of whether

DEA properly invoked various FOIA Exemptions in denying his requests.[6]

---

[5] Although the Court has an obligation to consider segregability issues *sua sponte*, none
are present in this case.

[6] North has also filed two procedural "motions" stemming from the fact that, due to
difficulties associated with being an imprisoned *pro se* litigant, he prematurely filed an affidavit
with disputed material facts in opposition to DEA's motion for summary judgment, which DEA
construed as his opposition brief.  In North's [36] Motion to Strike Pleadings from the Record,
North asks the Court to strike his affidavit and the DEA's response thereto.  Because the Court
does not expressly rely on either North's affidavit or DEA's response in deciding the parties'
motions for summary judgment, the Court shall deny North's motion to strike.
In North's [44] Motion for the Court to Notice Arguments the Government Has Denied
the Existence of Which Are Contained in the Plaintiff's Opposition to the Drug Enforcement
Administration's Motion for Summary Judgment, North presents legal arguments to rebut DEA's
reply briefing.  This "motion" is best construed as a surreply that duplicates the arguments raised
elsewhere in North's briefs.  Because the Court has considered all of the parties' arguments and

1.       **Glomar Response**

As an initial matter, the parties disagree about whether DEA acted properly in issuing a "Glomar" response to North's FOIA request for information related to Starita.  An agency may provide a Glomar response, that is, a refusal to confirm or deny the existence of law enforcement records or information responsive to the FOIA request, on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy.  *See Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976) (upholding CIA's refusal to confirm or deny existence of secret vessel, the Hughes Glomar Explorer); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995) (deeming a Glomar response appropriate "if confirming or denying the existence of records would associate the individual named in the request with criminal activity").  Properly asserted, a Glomar response relieves an agency of its usual obligation to "provide detailed affidavits proving that it performed an adequate search for documents."  *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 24 (D.D.C. 1998).

North contends that a Glomar response is improper here because Starita was publicly identified as a confidential informant for the DEA.  FOIA provides that "[w]henever informant records maintained by a criminal law enforcement agency . . . are requested by a third party . . . , the agency may treat the records as not subject to the requirements of [FOIA] unless the informant's status as an informant has been officially confirmed."  5 U.S.C. § 552(c)(2). However, "[w]here an informant's status has been officially confirmed, a Glomar response is unavailable, and the agency must acknowledge the existence of any responsive records it holds."

North is not affirmatively seeking any relief in his motion, the Court shall deny it.

*Boyd v. Criminal Division*, 475 F.3d 381, 389 (D.C. Cir. 2007); *see also Benavides v. Drug Enforcement Admin.*, 968 F.2d 1243, 1246 (D.C. Cir. 1992) (finding error in district court's failure to scrutinize DEA's response under § 552(c)(2) in light of allegation that informant's status had been "officially confirmed").   DEA contends that Starita's testimony at North's trial does not constitute "public confirmation" of his status as an informant.  *See* Decl. of William C. Little, Jr. (filed with DEA's Mot. for Summ. J.), ¶ 56.  However, DEA in its briefing does not rely solely on its Glomar response but also addresses the applicable FOIA exemptions.  Thus, although it appears from the trial record that the government conceded that Starita was a DEA informant, the Court need not decide whether this constitutes "official confirmation" for purposes of FOIA[7] because, as explained below, even if a Glomar response were improper, North is not prejudiced because he cannot show he is otherwise entitled to the information he requested.  *See Boyd*, 475 F.3d at 389.

### 2.      FOIA Exemptions

DEA has invoked FOIA Exemptions 6, 7(C), 7(D), and 7(F) as bases for its nondisclosure.  Exemption 6 protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 522(b)(6).  Exemptions 7(C), 7(D), and 7(F) protect from disclosure

> records or information compiled for law enforcement purposes, but only to the extent that the production of such records and information . . .

---

[7] No court in this district has defined what constitutes "official confirmation" of an informant's status, and the Court need not address that issue to resolve the parties' pending motions.

(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,

(D) could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source, . . . or

(F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7).  The Court finds the records sought by North are subject to one or more of these Exemptions.

Exemptions 6 and 7(C) require the court to balance the privacy interests of the individual whose records are sought with the public's interests in their disclosure.  *Beck v. Dep't of Justice*, 997 F.2d at 1491.  The Supreme Court has broadly interpreted the personal privacy interests protected by Exemption 7(C).[8]  *Id.*; *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 765-66 (1989) (recognizing a strong privacy interest in individualized information collected by law enforcement agencies).  It has long been recognized that disclosing information about an individual's involvement in law enforcement proceedings may constitute an unwarranted invasion of personal privacy for purposes of Exemption 7(C).  *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants.").  The fact that a witness testifies publicly at trial does not diminish or waive his privacy interest.  *Valdez v. U.S. Dep't of Justice*, 474 F. Supp. 2d 128, 133 (D.D.C. 2007).

---

[8] Because Exemption 7(C) is significantly broader than Exemption 6, *see Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004), the Court need not address Exemption 6 separately.

Accordingly, Starita has a strong privacy interest in protecting from disclosure any records that may describe his cooperation with DEA.

By contrast, the only public interest that is relevant for purposes of Exemption 7(C) is one that focuses on "the citizens' right to be informed about what their government is up to." *Reporters Comm.*, 489 U.S. at 773. The asserted public interest in disclosure must be "a significant one" and "more specific than having the information for its own sake." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). North's personal stake in obtaining documents in order to attack his conviction "does not count in the calculation of the public interest." *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004). The public interest is not served by "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct ." *Reporters Comm.*, 489 U.S. at 773. Where the public interest asserted is to show government negligence or impropriety, the requester "must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174. Here, North has failed to assert any public interest in favor of disclosure. "Where there is *no* asserted public interest, even the slightest privacy interest will prevent disclosure under Exemption 7(C)." *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008). Therefore, the balance of interests weights in favor of nondisclosure, and the Court finds the records to be covered by Exemption 7(C).

The disclosure of information related to Starita is also protected from disclosure by Exemption 7(D).[9]  Under Exemption 7(D), any information that a law enforcement agency receives from a confidential source in the course of a criminal investigation is protected from disclosure.  *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 492 & n.114 (D.C. Cir. 1980). This exemption "may be claimed regardless of the public interest in disclosure."  *Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 247 (6th Cir. 1994) (citing *Lesar*, 636 F.2d at 492). Moreover, this protection continues even after a source has been publicly identified, and the agency does not waive its right to assert this exemption when the confidential source testifies in open court.  *Parker v. Dep't of Justice*, 934 F.2d 375, 379 (D.C. Cir. 1991).  North does not dispute that Starita was a confidential source for DEA in the course of its criminal investigation against him.  Accordingly, the information sought by North is exempt from disclosure under Exemption 7(D).[10]

3.      **Public Domain**

North's final claim is that DEA cannot invoke any FOIA exemption because the records he is seeking are in the public domain.  It is true that "the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'"  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130-34 (D.C. Cir. 1983).

---

[9] DEA asks the Court to treat this issue as conceded because North failed to substantially address this issue in his briefing.  *See* Reply to Pl.'s Response to DEA's Mot. for Summ. J. at 9. Because North does attempt to address this issue, *see* Reply to DEA's Response to Pl.'s Mot. for Summ. J., ¶¶ 29-32, the Court proceeds to address the merits.

[10] Because the Court finds that DEA's nondisclosure is justified by Exemptions 7(C) and 7(D), the Court need not address DEA's argument regarding Exemption 7(F).

Under this public domain doctrine, "materials normally immunized from disclosure under FOIA

lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone*

*v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).  However, the plaintiff in such instances bears the

initial burden of "pointing to specific information in the public domain that appears to duplicate

what is being withheld." *Davis*, 968 F.2d at 1279.  This burden of production is substantial,

requiring the plaintiff to identify the exact portions of the permanent public record he wishes to

obtain. *See id.* at 1280.  North has not met this burden.  Although North has produced excerpts

from transcripts of his trial to show that the documents he is seeking may actually exist, he has

not shown that these documents were entered into evidence at trial or otherwise formally

enshrined in a permanent public record.  Thus, there is no showing from which the Court can

conclude with any confidence that the information sought by North truly is in the public domain.

Accordingly, the Court shall grant DEA's Motion for Summary Judgment and deny

Plaintiff's Motion for Summary Judgment with respect to its claim against DEA.

**B.      Requests Submitted to ATF (Count II)**

North and ATF have cross-moved for summary judgment on the issue of whether ATF's

search for records was adequate.  "To win summary judgment on the adequacy of a search, the

agency must demonstrate beyond material doubt that its search was 'reasonably calculated to

uncover all relevant documents.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890

(D.C. Cir. 1995) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  To meet

its burden, the agency may submit affidavits or declarations that explain in reasonable detail and

in a non-conclusory fashion the scope and method of the agency's search. *Perry v. Block*, 684

F.2d 121, 126 (D.C. Cir. 1982).  The agency must show that it made a "good faith effort to

14

conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA.  *Perry*, 684 F.2d at 127.  A search need not be exhaustive, *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1995), and the adequacy of the search is not determined by its results, but by the method of the search itself, *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  An agency's failure to find a particular document does not necessarily indicate that its search was inadequate.  *Wilber v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

ATF has met its burden to prove that its search for records requested by North was reasonable.  North's FOIA request was for records written by ATF Agent John Mercer involving Starita and North.  *See* ATF Mot. for Summ. J., Ex. A (July 4, 2007 FOIA Request).  The declaration submitted by ATF indicates that the agency searched for records in its Boston Field Division, where North was prosecuted and where Agent Mercer was assigned, because that is the most likely place where records would have been located.  *See* Decl. of Averill Graham (filed with ATF's Mot. for Summ. J.), ¶ 14.  The agency coordinated its search with Agent Mercer and reviewed all files identifiable to either Starita or North.  *Id.*  North contends that the search was inadequate because the records he requested could have been located in as many as seven different files (one for each of Starita's associates), yet ATF's affidavit does not show that each of these files was searched.  Pl.'s Mot. for Summ. J., ¶ 43.  But ATF is not required to search every conceivable place where a record might be found, particularly when the request does not

mention where responsive documents might be located.  *See Marks v. U.S. Dep't of Justice*, 578

F.2d 261, 263 (D.C. Cir. 1978) (holding that searches may be limited to requests that "reasonably

describe[]" where records may be found).  In this case it was reasonable for ATF to limit its

search to those records that were identifiable to North and Starita.  Moreover, contrary to North's

allegations, *see* Reply to ATF's Opp'n to Pl.'s Mot. for Summ. J., ¶ 8, the agency's declaration is

sufficiently detailed to show that the agency's search was thorough and reasonably calculated to

retrieve the documents requested by North.  ATF's failure to find any responsive documents does

not render the search inadequate.

**C.     Requests Submitted to EOUSA (Counts III and IV)**

North and EOUSA have filed cross-motions for summary judgment regarding the

adequacy of EOUSA's search for records related to North's grand jury and its invocation of

FOIA Exemption 3 in response to North's request for a grand jury subpoena.  The Court shall

address each in turn.

**1.     North's Request for Grand Jury Records (Count III)**

As noted above, to prevail on summary judgment as to the adequacy of a search for

records under FOIA, an agency must demonstrate that its search for records was reasonably

calculated to identify all of the relevant records requested.  *Nation Magazine v. U.S. Customs*

*Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).  EOUSA has produced two declarations in support of

its Motion for Summary Judgment, one from David Luczynski, an Attorney Advisor in EOUSA

FOIA/Privacy Act Unit, and one from Maryellen Barrett, the grand jury coordinator and FOIA

contact person at the Criminal Division of United States Attorney's Office (USAO) for the

District of Massachusetts.  *See* Decl. of David Luczynski ("Lucyznski Decl.") (filed with

16

EOUSA's Mot. for Summ. J.); Decl. of Maryellen Barrett ("Barrett Decl.") (EOUSA's Mot. for

Summ. J., Ex. F). Mr. Luczynski's declaration indicates that EOUSA forwarded North's request

to the USAO for the District of Massachusetts because that is where the records pertaining to

North's criminal case would be maintained. Luczynski Decl., ¶ 13. Ms. Barrett's declaration

indicates that she is familiar with the procedures that were followed in coordinating several FOIA

requests from North, including those numbered 06-1403, 06-1495, 06-2373, 08-40, and 081617.

*See* Barrett Decl., ¶ 2. Conspicuously absent from this list is request No. 07-2257, which is the

basis for Count III of North's Amended Complaint. *See* Amended Compl. at 4. Mr. Luczynski

attempts to explain this discrepancy with a footnote in his declaration by stating that "EOUSA's

policy [is] to summarily close deficient requests and open new, perfected requests with a new

number, even though the request itself is the for the same records as before." Luczynski Decl. at

2 n.1. It appears from the record that request No. 07-2257 is substantively identical to at least

one of these earlier requests received by Ms. Barrett that were ultimately denied because North

failed to provide the required certification of identity. *See* Barrett Decl., ¶¶ 3-6; EOUSA's Mot.

for Summ. J., Exs. A, B; Pl.'s Opp'n to EOUSA's Mot. for Summ. J. in Regard to the *North*

Grand Jury Material, ¶ 7 (indicating that requests related to the grand jury term were request

numbers 06-2373 and 07-2257).

However, Ms. Barrett's declaration indicates that in June 2006, North submitted another

FOIA request that "added and modified his request. His narrowed request was for a 'copy of a

grand jury subpoenas [sic] which issued in my name in either late 1997 or early 1998 in the

Boston U.S. Courthouse.'" Barrett Decl., ¶ 7. It is unclear from Ms. Barrett's use of the phrase

"[h]is narrowed request" whether she is referring to a new, additional request for a grand jury

17

subpoena (which is the basis for Count IV of North's Amended Complaint), or whether she

construed this new request as narrowing the scope of the earlier, broader request for grand jury

records.  Ms. Barrett indicates that this "new" request was No. 06-2373, *see* Decl. ¶ 8, but other

evidence in the record suggests that request No. 06-2373 did not pertain to grand jury subpoenas.

*See* EOUSA's Mot. for Summ. J., Exs. A (June 25, 2007 Letter to EOUSA) at 1, B (Aug. 9, 2007

Letter to Jeffrey North) at 1; Pl.'s Opp'n to EOUSA's Mot. for Summ. J. In Regard to the *North*

Grand Jury Material, ¶ 7.  Accordingly, when Ms. Barrett states that "[t]here were no records

responsive to this request," Decl. ¶ 10, the Court cannot determine whether her search

encompassed all of the information sought by North in his broader request.  Although Ms. Barrett

indicates that she was asked to conduct another search "for the subpoenas and the motion to

extend," Decl. ¶ 12, her additional searches appear to have been limited to searching for those

specific items.  *See id.* ¶ 13 ("There was no extension motion in the six boxes that I search [sic]

on August 20, 2007."); *id.* ¶ 14 ("I was asked by EOUSA to search again for any motions to

extend.").  While a motion to extend was certainly one of the documents that North was

requesting, North also sought all information relating to when the grand jury was empaneled and

all dates for grand jury sessions for the original and superseding indictments.  *See* EOUSA's

Mot. for Summ. J., Ex. A.  Furthermore, EOUSA has a duty to construe a FOIA request liberally.

*See Nation Magazine*, 71 F.3d at 890.

EOUSA contends that "[its] search parameter included all records pertaining to plaintiff,

the file related to plaintiff's prosecution, and the grand jury file."  Reply to Pl.'s Response to

EOUSA's Mot. for Summ. J. at 4.  But that statement is not supported by the declarations

attached to EOUSA's Motion.  Ms. Barrett's declaration is insufficiently specific to enable the

Court to determine that EOUSA's search was reasonably calculated to locate *all* of the records sought by North. Moreover, the lack of specificity is aggravated by the time discrepancies between Ms. Barrett's and Mr. Luczynski's declarations. According to Mr. Luczynski, North's request was remanded by OIP with instructions to search for responsive records on January 11, 2008. Luczynski Decl. ¶ 8. However, there is no mention of any searches conducted after August 2007 in Ms. Barrett's declaration, and there is no indication from Mr. Luczynski that any additional searches were conducted. In his Opposition to EOUSA's Motion for Summary Judgment, North also suggests that Ms. Barrett may have searched the wrong set of files because the grand jury subpoenas she did locate were from a different case than the grand jury records North sought in his broader request. *See* Pl.'s Opp'n to EOUSA's Mot. for Summ. J. In Regard to the *North* Grand Jury Material, ¶¶ 8-9. This contention is unaddressed by EOUSA in its reply. Given these uncertainties, the present record does not allow the Court to determine whether the search was adequate. The Court shall therefore dismiss without prejudice the parties' motions as to Count III of the Amended Complaint and permit the parties to refile.

### 2.    North's Request for His Grand Jury Subpoenas (Count IV)

North and EOUSA have cross-moved for summary judgment on the issue of whether EOUSA properly invoked FOIA Exemption 3 in denying North's request for a copy of a grand jury subpoena issued to him involving the trial of Paul DeCologero. FOIA Exemption 3 covers matters that are "specifically exempted by statute . . . provided that such statute either (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). EOUSA relies on Federal Rule of Criminal Procedure 6(e), which requires

secrecy for grand jury proceedings.  Rule 6(e) qualifies as a statute for purposes of FOIA

Exemption 3 because it was affirmatively enacted by Congress.  *See Fund for Constitutional*

*Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981).  Rule 6(e) bars

disclosure of information that would "tend to reveal some secret aspect of the grand jury's

investigation such . . . as the identities of witnesses or jurors, the substance of testimony, the

strategy or direction of the investigation, the deliberations or questions of jurors, and the like."

*Senate of the Commonwealth of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d

574, 582 (D.C. Cir. 1987) (internal quotation marks omitted).  Disclosure of a grand jury

subpoena would reveal some secret aspect of the grand jury's investigation.  *See Kishore v. Dep't*

*of Justice*, 575 F. Supp. 2d 243, 255 (D.D.C. 2008) (finding that grand jury subpoenas may not

be disclosed under Rule 6(e).

North's request for a copy of his grand jury subpoena is encompassed by the FOIA

Exemption 3 based on Rule 6(e) because its disclosure would reveal secret information about the

scope of the grand jury's investigation.  Although North has a First Amendment right to discuss

any prior testimony he gave to a grand jury whose investigation is completed, *see Butterworth v.*

*Smith*, 494 U.S. 624 (1990), the disclosure of a subpoena would constitute official confirmation

of North's involvement and reveal some secret aspect of the grand jury proceedings.  North

contends that the rationale for secrecy has expired now that several years have passed since

DeCongolero was put on trial.  *See* Pl.'s Mot. for Summ. J., ¶ 59.  But there is no time limit on

Rule 6(e), and courts in this district have routinely upheld the application of Exemption 3 to

grand jury proceedings that expired long ago.  *See, e.g.*, *Covington v. McLeod*, No. 08-1220,

2009 WL 2525933, at *1-2 (D.D.C. Aug. 19, 2009) (involving records from grand jury

proceedings that led to a trial in 1996).  North further contends that the apparent

acknowledgment by EOUSA in Ms. Barrett's declaration that the requested subpoenas do exist

effectively "lets the cat out of the bag" and destroys any remaining secrecy.  *See* Pl.'s Opp'n to

EOUSA's Mot. for Summ. J. at 3-4.  But EOUSA has never actually disclosed any such

subpoenas, so the secrecy surrounding their content remains intact.  Unless North can

demonstrate that these subpoenas somehow have entered the public domain and become part of a

permanent public record, *see* discussion *supra*, EOUSA is entitled to rely on Rule 6(e) and

Exemption 3 as the basis for withholding grand jury subpoenas.  Accordingly, the Court shall

grant EOUSA's Motion for Summary Judgment and deny Plaintiff's Motion for Summary

Judgment with respect to Count IV of the Amended Complaint.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall GRANT Defendant Drug Enforcement Administration's [19] Motion for Summary Judgment, GRANT Defendant Bureau of Alcohol, Tobacco, Firearms & Explosives' [8] Motion for Summary Judgment, and GRANT IN PART and DENY WITHOUT PREJUDICE IN PART Defendant Executive Office for United States Attorneys' [17] Motion for Summary Judgment.  The Court shall DENY IN PART and DENY WITHOUT PREJUDICE IN PART Plaintiff's [10] Motion for Summary Judgment.  The Court shall allow the parties to refile their motions for summary judgment as to Count III of the Amended Complaint.  The Court also shall DENY Plaintiff's [36] Motion to Strike Pleadings from the Record and DENY Plaintiff's [44] Motion for the Court to Notice Arguments the Government Has Denied the Existence of Which Are Contained in the Plaintiff's Opposition to the Drug Enforcement Administration's Motion for Summary Judgment.  An appropriate Order accompanies this Memorandum Opinion.


Date:   September 30, 2009


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge