**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEFFREY NORTH,<br><br>     Plaintiff,<br><br>          v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, *et al.*,<br><br>     Defendants. | **Civil Action No. 08-1439 (CKK)** |

**MEMORANDUM OPINION**
(September 9, 2013)

Plaintiff Jeffrey North, proceeding *pro se*, filed suit against the Drug Enforcement

Administration ("DEA") and several other federal agencies alleging violations of the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.  The only remaining claim at issue is Count 1 of the

Amended Complaint, which challenges the DEA's *Glomar* response to the Plaintiff's FOIA

request seeking information regarding a purported DEA informant—Gianpaolo Starita—who

testified against the Plaintiff during his criminal trial.  The Court previously granted summary

judgment in favor of the DEA on this count, but vacated that judgment upon the Plaintiff's

motion to reconsider, and ordered the DEA to conduct a search for responsive records.  Presently

before the Court are the parties' renewed cross-motions for summary judgment and the

Plaintiff's motion for a *Vaughn* index.  Upon consideration of the parties' pleadings,[1] the

---

[1] The Court's decision is based on the record as a whole, but the Court's analysis focused the following documents, in chronological order of filing: DEA's Second Renewed Mot. for Summ. J. ("DEA's Mot."), ECF No. [149]; Pl.'s Opp'n & Second Renewed Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot."), ECF No. [153]; DEA's Reply & Opp'n to Pl.'s Second Renewed Cross-Mot. ("DEA's Reply"), ECF No. [155]; Pl.'s Mot. for *Vaughn* Index, ECF No. [164]; Pl.'s Reply, ECF No. [167]; Pl.'s Errata, ECF Nos. [168-170]; Def.'s Notice, ECF No. [171].

relevant legal authorities, and the summary judgment record, the Court finds the DEA conducted

an adequate search for responsive records, which revealed no records responsive to the Plaintiff's

request.  Accordingly, the DEA's [149] Second Renewed Motion for Summary Judgment is

GRANTED and the Plaintiff's [153] Second Renewed Cross-Motion for Summary Judgment and

[164] Motion for *Vaughn* Index are DENIED.

## I.  BACKGROUND

### A.      *Plaintiff's FOIA Requests*

Following a jury trial in March 2000, the Plaintiff was convicted of conspiracy to possess

with intent to distribute marijuana and various firearm-related offenses.  *See United States v.*

*North*, No. 98-10176, Jury Verdict (D. Mass. Mar. 15, 2000).  The Plaintiff is currently serving a

combined term of imprisonment of 540 months.  *United States v. North*, No. 98-10176,

Judgment (D. Mass. Dec. 26, 2000).  Between 2004 and 2008, the Plaintiff submitted six

separate Freedom of Information Act requests to the DEA seeking information regarding

Gianpaolo Starita, who testified against the Plaintiff during the Plaintiff's criminal trial.  *See*

First Little Decl., ECF No. [19-1], ¶¶ 14-35.  The Plaintiff's Amended Complaint challenges the

DEA's response to the request submitted on July 13, 2007, seeking any and all documents

"which contain any debriefing/proffer statements made/given by Gianpaolo Starita in regard to

[Plaintiff]."  First Little Decl., ECF No. [19-1] Ex. M at 1.  The Plaintiff explained that during

the Plaintiff's criminal trial, Starita testified that

> [Starita] was a drug dealer in the illegal purchase and sales of marijuana and that
> his partners in this illegal drug business were Gele Kostovski and Roger Leach,
> with Robert Ortel-Wortel, Josh Goodman, Michael Papone, Jay Grassis being
> other persons who assisted [Starita] in his illegal drug business.  Additionally,
> Starita testified in relation to telephone conversations that he had with Regina
> Monaghan and that he met her at Boston Billiards.  Starita also testified that he
> had met Carla North at the apartment of Roger Leach.  Starita testified that he had

a relationship with DEA Agent Damian Farley and ATF Agent John Mercer
testified at my trial that he debriefed Starita.

*Id.* The request included an affidavit from the Plaintiff averring that Starita testified to the above

information, and further testified that he (Starita) "sold large quantities of marijuana to

[Plaintiff]." *Id.* at 3.

The DEA responded to the Plaintiff's 2007 request on September 20, 2007, by indicating

that the agency would "neither confirm[] nor den[y] the existence of any requested records

regarding Gianpaolo Starita." First Little Decl., Ex. O (9/20/2007 Ltr.) The agency explained

that

> Without proof of death or an original notarized authorization, to confirm the
> existence of law enforcement records or information about another person is
> considered an unwarranted invasion of personal privacy. Such record would be
> exempt from disclosure pursuant to Exemptions (b)(6) and/or (b)(7)(C) of the
> Freedom of Information Act (FOIA), Title 5 U.S.C. Section 552. Before DEA
> can begin processing information related to any alleged criminal background, it
> will be necessary for you to provide either proof of death or an original notarized
> authorization (privacy waiver) from that person.

*Id.* The Plaintiff appealed the DEA's response to the Office of Information Policy ("OIP"), but

the OIP affirmed the DEA's action. First Little Decl., Exs. P (11/3/2007 Appeal from denial of

FOIA request) & R (12/31/2007 Ltr. affirming DEA response).

On May 1, 2008, the Plaintiff submitted a FOIA request to the Drug Enforcement

Administration seeking "all documents . . . that contain any debriefing/proffer statements

made/given by Gianpaolo Starita," and repeating the same summary of Starita's testimony as set

forth in the Plaintiff's 2007 request. Pl.'s Reply, Ex. A (5/1/2008 FOIA Request). The

Plaintiff's request included an excerpt of the trial transcript of Mr. Starita's testimony, and an

affidavit from the Plaintiff averring that the transcript excerpts "are true and correct copies from

the trial transcripts as [the Plaintiff] received them from the court reporter." *Id*. at 3. The DEA

once again refused to confirm or deny whether any of the requested records exist. Pl.'s Reply, Ex. B (9/18/2008 Ltr.).

B. *Litigation History*

The Plaintiff filed suit on August 15, 2008, and amended his complaint on September 12. *See* Compl., ECF No. [1]; Am. Compl., ECF No. [3]. Count I of the Amended Complaint challenges the DEA's response to the Plaintiff's 2007 Request. Am. Compl. at 2-3. The Plaintiff has never amended his complaint to include the DEA's response to his 2008 request. Count II contests the Bureau of Alcohol, Tobacco, Firearms, and Explosives' response to a FOIA request submitted by the Plaintiff in July 2007 which also sought records relating to Mr. Starita. *Id.* at 3-4. Counts III and IV challenge responses from the Executive Officer for United States Attorneys to FOIA requests seeking documents concerning Grand Jury proceedings relating to the Plaintiff. The Court granted summary judgment to the Defendants on Count I-II and IV on September 30, 2009. *North v. U.S. Dep't of Justice*, 658 F. Supp. 2d 163 (D.D.C. 2009). The Court subsequently granted summary judgment on Count III in favor of the Executive Office for the United States Attorneys. *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217 (D.D.C. 2011).

Upon reconsideration, the Court determined that its ruling with respect to Count I was too broad, and thus vacated the grant of summary judgment and ordered the DEA to "search for and produce any responsive records that contain information identical [to] that which has been publicly disclosed" in trial transcripts submitted by the Plaintiff. *North v. U.S. Dep't of Justice*, 810 F. Supp. 2d 205, 208 (D.D.C. 2011). The DEA sought reconsideration of the Court's September 2011 order, which the Court denied, setting the stage for the cross-motions for summary judgment now before the Court. *North v. U.S. Dep't of Justice*, 892 F. Supp. 2d 297 (D.D.C. 2012).

## II.  LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (citation omitted), *cert. denied*, 507 U.S. 984 (1993).  To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material."  *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1261-62 (2011).  Ultimately, "disclosure, not secrecy, is the dominant objective of the act."  *Rose*, 425 U.S. at 361.  For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner*, 131 S.Ct. at 1262 (citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA."  *Multi Ag. Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted).  The burden is on the agency to justify its response to the plaintiff's request.  5 U.S.C. § 552(a)(4)(B).  "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Multi Ag Media*, 515 F.3d at 1227 (citation omitted).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption,

and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dept of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). With these principles in mind, the Court turns to the merits of the parties' cross-motions for summary judgment.

### III. DISCUSSION

The crux of the DEA's renewed motion for summary judgment is that a reasonable search for responsive documents did not locate any documents responsive to the Plaintiff's request.[2] "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 390 (D.C. Cir. 1999) (citation omitted). "At summary judgment, a court may rely on [a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Ancient Coin Collectors Guild*, 641 F.3d at 514 (citation omitted). "The agency cannot limit its search to only one or more places if there are additional

---

[2]   Although the DEA's motion discusses various FOIA exemptions, the Court understands from the DEA' s [171] Notice that it is seeking summary judgment on the grounds that the search conducted by the agency was reasonable and did not locate any responsive documents.

sources that are likely to turn up the information requested." *Valencia-Lucena*, 180 F.3d at 391 (citation omitted). Ultimately, the adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted).

To establish the adequacy of its search for records responsive to the Plaintiff's request, the DEA submitted a declaration from William C. Little, Jr. Third Little Decl., ECF No. [149-1]. Mr. Little is an attorney with the Office of Chief Counsel for the DEA. First Little Decl., ECF No. [19], ¶¶ 3-4. Mr. Little explained that "[i]f any records exist that summarized information provided DEA by an individual or entity during the course of a criminal investigation, the information would be summarized in a DEA Report of Investigation (ROI). The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA ROI." Third Little Decl. ¶ 4. DEA investigative case files are maintained in the DEA Investigative Reporting and Filing System, or "IRFS." *Id.* ¶¶ 4-5. The IRFS contains "*all* administrative, general, and criminal investigative files" compiled by the DEA for law enforcement purposes. *Id.* ¶ 6 (emphasis added). Accordingly, Mr. Little explained that "[a]ny DEA ROI responsive to plaintiff's request is reasonably likely to be found in the DEA [IRFS]." *Id.* ¶ 4. The "Narcotics and Dangerous Drugs Information System," or "NADDIS" is the index to IRFS. *Id.* ¶ 7. Individuals are identified in NADDIS by their name, social security number, and/or date of birth. *Id.*

Investigative files are titled according to the name of the principal suspect at the time the DEA office commencing the investigation opened the file. Third Little Decl. ¶ 5. In addition to information regarding the suspect for which the file is named, an investigative file "may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the. file." *Id.* The DEA does not maintain separate investigative

files on each individual or entity that is of investigative interest to the agency, thus "information related to any individual or entity could be contained in multiple investigative case files." *Id.* "Proffer statements taken from an individual that is functioning as a confidential source are filed in investigative case files and confidential source files." *Id.* ¶ 11.

In response to the Plaintiff's request, the DEA conducted two NADDIS queries. First, the DEA searched for the Plaintiff's name, social security number, and date of birth, which identified three criminal investigative files in which information regarding the Plaintiff was located. Third Little Decl. ¶ 8. There was no indication in any of the files that "a Gianpaolo Starita was a criminal associate of plaintiff." Second, the DEA searched for any files associated with "Gianpaolo Starita." *Id.* ¶ 9. "The files identified in NADDIS associated with a Gianpaolo Starita did not correspond with any DEA file associated with plaintiff, and plaintiff was not listed as a criminal associate of any Gianpaolo Starita."[3] *Id.* In other words, the DEA's searches did not reveal any investigative files in which both the Plaintiff and Gianpaolo Starita appear. *Id.* ¶ 11. Furthermore, Mr. Little personally reviewed the confidential source file for Gianpaolo Starita on February 23, 2012, and October 5, 2012, but did not locate any responsive records. *Id.*

The detailed affidavit provided by Mr. Little clearly establishes the adequacy of the DEA's search documents responsive to the Plaintiff's 2007 request. The Plaintiff sought any debriefing or proffer statements made by Mr. Starita concerning the Plaintiff. Mr. Little explained these statements, if they existed, would appear in relevant investigative files and Mr. Starita's confidential source file. All investigative files are maintained in IRFS and indexed by NADDIS. The DEA searched NADDIS for the Plaintiff's name and Mr. Starita's name. None

---

[3] Contrary to the Plaintiff's repeated assertion, the DEA does not claim that it was unable to determine if the files indexed under the name "Gianpaolo Starita" refer to the same person identified in the Plaintiff's FOIA request. *See* Pl.'s Reply ¶ 22.

of the investigative files located during these searches indicated the Plaintiff and Mr. Starita were criminal associates.  The affiant personally reviewed Mr. Starita's confidential source file, and did not locate any responsive documents.  The DEA's search was reasonably calculated to uncover all relevant documents, thus satisfying the agency's obligations under the Freedom of Information Act.

The Plaintiff did not address the adequacy of the DEA's search in his opposition to the DEA's motion.  *See generally* Pl.'s Cross-Mot., ECF N0. [153].  The Court shall not consider arguments raised for the first time in the Plaintiff's reply in support of his cross-motion.  *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008).  Even if the Court were to consider the Plaintiff's arguments, none have merit.  First, the Plaintiff argues that the fact that Gianpaolo Starita and the Plaintiff were not listed as criminal associates in any investigative files "is not to say that there is no statement in the Starita file that Movant was either a criminal or non-criminal associate of Starita."  Pl.'s Reply ¶ 19.  Even if the Plaintiff's argument were true, the Plaintiff does not dispute the representation in the Third Little Declaration that any statements Mr. Starita might have made about the Plaintiff would also be in Mr. Starita's confidential source file, and a review of that file did not locate any responsive documents.

Second, the Plaintiff contends that the DEA's search was inadequate because there is no indication "that a search was conducted for information related to Starita and his seven marijuana trafficking associates identified in the pages of trial transcripts attached to [Plaintiff's] May 1, 2008, FOIA request."  Pl.'s Mot. for *Vaughn* Index ¶ 6; Pl.'s Reply ¶¶ 20-21.  The Plaintiff's original and amended complaints address the Plaintiff's 2007 request to the DEA only.  The DEA does not have to establish that it conducted an adequate search for documents responsive to a *different* request in order to justify a grant of summary of judgment with respect to its search

concerning the Plaintiff's 2007 request.  Third, the Plaintiff suggests that the DEA was obligated

to conduct a separate search "for information contained in the DEA's records which matches the

information in the 250+ pages of trial and grand jury transcripts containing testimony of Starita."

Pl.'s Reply ¶ 13; Pl.'s Mot. for *Vaughn* Index ¶ 6.  If the DEA had located documents responsive

to the Plaintiff's request, certain exemptions may not have applied if the information was

disclosed in the transcripts at issue.  Because the DEA's search did not locate any documents

responsive to the Plaintiff's 2007 request, the transcript issue is moot.

Finally, the Court notes there are no grounds on which to require the DEA to produce a

*Vaughn* index.  "A *Vaughn* index indicates in some descriptive way which documents the agency

is withholding and which FOIA exemptions it believes apply."  *Am. Civil Liberties Union v. CIA*,

710 F.3d 422, 432 (D.C. Cir. 2013).  The DEA did not locate any documents responsive to the

Plaintiff's 2007 request, thus the DEA has not withheld any documents pursuant to any FOIA

exemptions and there are no documents to index.

//

//

//

//

//

//

//

//

//

//

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the DEA is entitled to summary judgment on Count I of the Amended Complaint.  As set forth in detail in the declaration submitted by William Little, the agency's search was reasonably calculated to locate all relevant documents, but ultimately did not locate any records responsive to the Plaintiff's 2007 request.  Because the agency did not locate any responsive documents, there are no grounds for requiring the DEA to produce a *Vaughn* index.  Accordingly, the DEA's [149] Second Renewed Motion for Summary Judgment is GRANTED and the Plaintiff's [153] Second Renewed Cross-Motion for Summary Judgment and [164] Motion for Vaughn Index are DENIED.  An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE